BRONSON LAW OFFICES, P.C.
*Proposed Counsel for Debtor and Debtor-in-Possession*
480 Mamaroneck Avenue
Harrison, NY 10528
914-356-1728 (tel.)
888-908-6906 (fax)
H. Bruce Bronson
hbbronson@bronsonlaw.net

UNITED STATE BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
In re:  Case No.:19-22823 (RDD)
 Chapter 11
LA CREMAILLERE RESTAURANT CORP.

                        Debtor.

----------------------------------------------------------x

**DEBTOR'S MOTION FOR AN ORDER (A) AUTHORIZING THE USE OF CASH COLLATERAL PURSUANT TO BANKRUPTCY CODE SECTION 363(c)(2) AND BANKRUPTCY RULES 4001 ON AN INTERIM BASIS AND PROVIDING ADEQUATE PROTECTION THEREFOR PURSUANT TO 11 U.S.C. §§361 AND 362, (B) SCHEDULING A FINAL HEARING; AND SUCH <u>OTHER AND FURTHER RELIEF AS THE COURT FINDS JUST AND PROPER</u>**

**TO THE HONORABLE ROBERT D. DRAIN**
**UNITED STATES BANKRUPTCY JUDGE:**

       LA CREMAILLERE RESTAURANT CORP., the debtor and debtor-in-possession (the "**Debtor**"), by its proposed attorneys, the Bronson Law Offices, P.C. submits this motion (the "**Motion**") for an order (a) authorizing the use of cash collateral pursuant to bankruptcy code section 363(c)(2) and bankruptcy rule 4001 on an interim basis and providing adequate protection therefor pursuant to 11 U.S.C. §§361 and 362; (b) scheduling a final hearing; and (c) such other relief as the Court finds just and proper. In support of the Motion, the Debtor represents as follows:

## SUMMARY OF RELIEF REQUESTED

1. By this Motion, the Debtor seeks authority to utilize its income to fund ongoing operations and to enable it to reorganize. Absent approval of the Debtor's use of cash collateral, the Debtor would be unable to fund its operations and would be unable to meet its obligations to Celtic Bank Corporation, 268 S. State Street, Suite 300, Salt Lake City, Utah ("**Celtic**").

2. The Debtor's use of the cash collateral pursuant to the proposed enclosed budget will enable the Debtor to reorganize its operations while at the same time adequately protecting Celtic. Debtor's continued operations will ensure that it can continue to pay MEYZEN REALTY ASSOCIATES LLC ("**Meyzen Realty**") its landlord, who in turn pays Celtic.

3. Meyzen Realty and the Debtor are both liable to Celtic on a loan that is in default and Celtic has a collateral interest in the assets of Meyzen Realty and Debtor. The Debtor and Meyzen have common ownership and Meyzen has also filed Chapter 11 bankruptcy.[1]

## JURISDICTION AND VENUE

4. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O). Venue of this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] Meyzen Realty filed for chapter 11 bankruptcy protection on September 13, 2019 2018, case no.:18-23419

5. The statutory predicate for the relief requested in this Motion is §§ 105, 361, 362 and 363 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "**Bankruptcy Code**") and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## BACKGROUND

6. On April 17, 2019 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, in the United States Bankruptcy Court for the Southern District of New York.

7. The Debtor is a French country restaurant that remains debtor-in-possession pursuant to Bankruptcy Code sections 1107 and 1108.

8. To date, no trustee, examiner or statutory creditors' committee has been appointed in the Debtor's chapter 11 case.

9. The Debtor's restaurant is located at 46 Bedford-Banksville Road, Bedford, NY 10506 ("**Property**").

10. On September 16, 2013 Celtic Bank Corporation ("**Celtic Bank**"), Meyzen Realty and Debtor entered into a first lien mortgage and note[2] in the amount of $905,000.00, as well as an assignment of rents that is recorded in Westchester County, in favor of Celtic Bank. Celtic also filed UCC-1 financing statements on both Debtor and Meyzen securing its interest in any personal property and/or fixtures. Purportedly the amount currently owed is in excess of $1,230,238.10 (the "**Senior Loan**").

---

[2] The note was a US Small Business Administration Note, made and executed by Meyzen Family Realty Assoicates LLC and La Cremaillere Restaurant Corp. in favor of Celtic Bank Corporation

3

11. Pursuant to the Loan and UCC-1 filing Celtic has a collateral interest in all of Debtor's assets including cash ("**Cash Collateral**" or "**Collateral**"). See "**Exhibit A**".

12. On or about April 7, 2017, Celtic Bank filed an action in the Supreme Court of the State of New York, County of Westchester, which is captioned Celtic *Bank Corporation vs. Myzen Family Realty Associates, LLC, Lacremaillere Retaurant Corp., et. al.* (Index No. 54658/2017), which is still pending.

13. L&J Smith Investments LLP ("**L&J**"), holds a second mortgage on the Property that was originally in the amount of $155,000. It is unclear as to whether or not L&J asserts an interest against the Debtor.

### RELIEF REQUESTED AND BASIS THEREFOR

14. The Debtor seeks (a) entry of an interim order for the interim use of cash collateral, attached as "**Exhibit B**"; and (b) entry of a final order authorizing the use of cash collateral and granting adequate protection to Lender.

**The Proposed Use of Cash Collateral Is Appropriate and Should Be Authorized**

15. Section 363(c)(2) of the Bankruptcy Code sets forth the requirements for a debtor's proposed use of cash collateral, and provides, in pertinent part that: "[t]he trustee may not use, sell, or lease cash collateral … unless – (A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2).

16. Section 105(a) of the Bankruptcy Code also allows that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

17. The Debtor's proposed use of Cash Collateral is necessary to preserve the Debtor's estate during this case and will avoid immediate and irreparable harm to the Debtor's estate and its creditors and will provide adequate protection to Celtic Bank by providing sufficient cash to pay the mortgage to Celtic Bank.

18. Specifically, the Debtor proposes to use all proceeds of the business to pay operational costs of the Debtor including, payments for insurance and property taxes and an amount equal to **$6,874.35** per month which represents Debtor's obligation to Meyzen Family for the purposes of paying the mortgage.

19. The Debtor submits the enclosed proposed budget for its use of the Cash Collateral (the "**Budget**"). A copy of the Budget is attached as "**Exhibit C**". As detailed in the Budget, the Debtor proposes to pay all of its operating costs, the rent payment to Meyzen Family (paid directly to Celtic), property taxes and insurance as they come due.

20. The Debtor proposes to use Collateral on an interim basis only for ordinary and necessary limited operating expenses in connection with the ordinary business operations of the Debtor's business and assets substantially in accordance with the 30-day interim operating Budget. The Debtor believes that the Interim Budget includes all reasonable, necessary and foreseeable expenses to be incurred in the ordinary course of operating the Debtor's business for the interim period set forth in the Budget. The Debtor believes that the interim use of Collateral in accordance with the Budget will provide the Debtor with adequate liquidity to pay ordinary course payable administrative

expenses as they become due and payable during the period covered by the Budget without any significant diminution in value of the collateral. In advance of the Final Hearing on this Motion, the Debtor will file an updated budget.

21. The relief sought by this Motion will allow the Debtor to use its operating revenues in accordance with the Budget for the benefit of all creditors, including Celtic so that it may continue in business preserving its value as a going concern.

22. By utilizing the Collateral as set forth in the Budget attached, the Debtor and Meyzen can pursue refinancing which should ultimately repay Celtic in full.

**The Proposed Adequate Protection is Appropriate**

26. Bankruptcy courts have broad flexibility under 11 U.S.C. § 361 in deciding what constitutes adequate protection. Section 361 specifies the means by which adequate protection may be provided. It does not require the court to provide it. To do so would place the court in an administrative role. Instead, the trustee or debtor in possession will provide or propose a protection method. If the party that is affected by the proposed action objects, the court will determine whether the protection provided is adequate. The purpose of this section is to illustrate means by which it may be provided and to define the contours of the concept H.R. Rep. No. 95-595, at 338, 95th Cong., 1st Sess. (1977); *see also Resolution Trust Corp. v. Swedeland Dev. Group, Inc.* (*In re Swedeland Dev. Group, Inc.*), 16 F.3d 552, 564 (3d Cir. 1994) ("[A] determination of whether there is adequate protection is made on a case by case basis.").

27. The principal purpose of adequate protection is to safeguard the interest of the secured creditor in the particular collateral against diminution in the value of such

interest. *Id* at 564 ("[T]he whole purpose of adequate protection for a creditor is to ensure that the creditor receives the value for which he bargained prebankruptcy.") (quoting *In re O'Connor*, 808 F.2d 1393, 1396 (10th Cir. 1987)); accord *In re DeSardi*, 340 B.R. 790, 804 (Bankr. S.D. Tex. 2006) ("The purpose of adequate protection is to assure that the lender's economic position is not worsened because of the bankruptcy case."); *In re Hollins*, 185 B.R. 523, 528 (Bankr. N.D. Tex. 1995) ("Adequate protection seeks to protect a creditor from an [sic] decline in the value of its collateral . . . .").

28. However, Courts are "not obligated to protect the creditor better than it did itself when making the loan and obtaining security." *In re Heatron, Inc.*, 6 B.R. 493, 496 (Bankr. W.D. Mo. 1980). The interest to be protected by virtue of the adequate protection requirement is the lesser of the amount of the debt or the value of assets securing the debt as of the Petition Date. See *In re Alyucan Interstate Corp.*, 12 B.R. 803, 808 (Bankr. D. Utah 1981) ("[T]he 'interest in property' entitled to protection is not measured by the amount of the debt but by the value of the lien.").

29. Here, the value of the Celtic lien(s) is more than adequately protected by the value of the Property, on which it has a mortgage, and the value of Debtor's assets including its extensive wine cellar and hence there is a significant equity cushion. Moreover, the proposed Budget provides for the maintenance and operation of the Debtor's restaurant and the Property owned by Meyzen, thereby further protecting Celtic.

30. In essence, therefore, Celtic's lien(s) is protected by the payment of the Celtic mortgage on an ongoing basis, the value of the Property on which it holds a mortgage and the value of the Debtor's property including its wine cellar, kitchen equipment and furnishings. It is therefore respectfully submitted that Celtic is adequately protected.

**The Proposed Budget Will Allow the Debtor to Continue Operating the Restaurant Thereby Adequately Protecting the Interests of Celtic Bank.**

31. As noted, even in the absence of any payments post-petition to Celtic Bank, the value of the Property and Debtor's property, alone, provides for adequate protection for the Lender's claim.

33. Courts have routinely held that adequate protection may be demonstrated by a showing that the going concern value of a debtor, or that the value of the lender's collateral, is preserved by the debtor's continued operations and use of cash collateral. *See, e.g., In re JKJ Chevrolet, Inc.,* 117 F.3d 1413, 1413 (4th Cir. 1997) (allowing use of cash collateral to operate automobile dealership as long as continued operations maintained the value of the business); *In re Snowshoe Co., Inc.*, 789 F.2d 1085, 1087 (4th Cir. 1986) (allowing use of cash collateral to operate ski resorts where trustee reported that ski resort would lose 50% to 90% of its fair market value if it ceased operations); *In re 499 W. Warren St. Assocs., Ltd. P'ship*, 142 B.R. 53, 56-57 (Bankr. N.D.N.Y. 1992) (finding secured creditor's interest in collateral adequately protected when cash collateral was applied to normal operating and maintenance expenditures on collateral properties); *In re Constable Plaza Assocs., L.P.*, 125 B.R. 98, 105 (Bankr. S.D.N.Y. 1991) (debtor entitled to use cash collateral to operate and maintain office building, thereby protecting secured lender's collateral).

34. Here, the cash expenditures proposed in the Budget will directly serve to preserve and maintain the pre-petition value of Celtic's secured claim. Moreover, use of the Cash Collateral consistent with the Budget will maintain the overall value of the Debtor as an ongoing enterprise and enhance the chances of a successful outcome for this case. Further the Debtor has good prospects of refinancing, which would allow for the successful

conclusion of this case. Debtor expects that a motion for refinancing will be filed prior to the hearing of this motion.

35. If the Debtor is precluded from making expenditures necessary to maintain its assets and conduct operations in the ordinary course, the Debtor's estate will lose considerable value and all creditors — secured and unsecured — will be harmed. *See, e.g., In re Aqua Assocs.*, 123 B.R. 192, 196 (Bankr. E.D. Pa. 1991) ("The important question, in determination of whether the protection to a creditor's secured interest is adequate, is whether that interest, whatever it is, is being unjustifiably jeopardized.") (citing *In re Grant Broad. of Philadelphia, Inc.*, 71 B.R. 376, 386-89 (Bankr. E.D. Pa. 1987), aff'd, 75 B.R. 819 (E.D. Pa. 1987), and *In re Alyucan Interstate Corp.*, 12 B.R. at 809-12).

36. The Order provides that, as adequate protection for the Debtor's use of the Secured Lenders' collateral and in consideration for the use of the Collateral, the Debtor shall grant replacement liens in all of the Debtor's pre-petition and post-petition assets and proceeds, only to the extent that Celtic has a valid security interest in the pre-petition assets on the Petition Date and in the continuing order of priority that existed as of the Petition Date (the "**Replacement Liens**").

37. The Replacement Liens shall be subject and subordinate only to: (a) United States Trustee fees payable under 28 U.S.C. §1930 and 31 U.S.C. §3717; (b) professional fees of duly retained professionals in this Chapter 11 case as may be awarded pursuant to Sections 330 or 331 of the Code or pursuant to any monthly fee order entered in the Debtor's Chapter 11 case; (c) the fees and expenses of a hypothetical Chapter 7 trustee to the extent of $10,000; and (d) the recovery of funds or proceeds from the successful

prosecution of avoidance actions pursuant to section 502(d), 544, 545, 548, 549, 550 or 553 ("Avoidance Actions") of the Bankruptcy Code (collectively, the "Carve-Outs").

## NOTICE

38. The Debtor has received a court date of May 15, 2019 and has served by U.S. mail and through the ECF system this motion on the United States Trustee, Celtic, all other secured lenders, all parties that have filed a notice of appearance and all unsecured creditors and accordingly the Debtor submits that no further notice is necessary under the facts and circumstances of this matter.

39. No prior application has been made for the relief sought herein.

40. By this motion the Debtor does not concede the validity of Celtic Bank's claim and specifically reserves all of its rights to object to the nature, extent and validity of such claims.

**WHEREFORE**, the Debtor respectfully requests that the Court enter an Order granting the relief requested, including (i) authorizing the Debtor's use of cash, including Cash Collateral, pursuant to the terms of the Order (including the Budget); (ii) finding that the interests of Celtic Bank is adequately protected; (iii) scheduling a hearing for final relief and (iv) for such other and further relief as the Court deems just and proper.

Dated: Harrison, NY
    April 30, 2019                          Bronson Law Offices, P.C.

                                           By:*/s/ H. Bruce Bronson*
                                           H. Bruce Bronson, Esq.