GEOFFREY S. BERMAN  
United States Attorney for the  
Southern District of New York  
By: ALEXANDER J. HOGAN  
Assistant United States Attorney  
86 Chambers Street, Third Floor  
New York, New York 10007  
Tel. No.: (212) 637-2799  
Fax No.: (212) 637-2686  
E-mail: alexander.hogan@usdoj.gov

**HEARING DATE AND TIME:**
**May 15, 2019 AT 10:00 A.M.**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>LA CREMAILLERE RESTAURANT CORP.,<br><br>　　　　　　　　　Debtor. | Chapter 11<br><br>No. 19-22823 (RDD) |

### MEMORANDUM OF LAW IN SUPPORT OF THE IRS'S OBJECTION TO THE MOTION OF DEBTOR TO USE CASH COLLATERAL AND FOR ENTRY OF AN ORDER TO REQUIRE DEBTOR TO PROVIDE FOR ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. § 361 AND § 363(e)

The United States of America, on behalf of the Internal Revenue Service ("IRS"), by its attorney Geoffrey S. Berman, United States Attorney for the Southern District of New York, respectfully submits this memorandum in support of its objection to the motion of Debtor La Cremaillere Restaurant Corp. ("Debtor") for entry of an order authorizing it to use cash collateral (the "Motion"), Dkt. No. 6, as well as the proposed order ("Proposed Order") submitted in connection with the Motion. Dkt. No. 6, Ex. B.[1]

The IRS has a secured claim of $159,259.89. It is thus entitled to adequate protection of its pre-petition secured interest in the Debtor's collateral, including any cash collateral. The

---

[1] With its objection, the IRS has submitted its own proposed order and a redline of that order as compared to the Order submitted by Debtor.

Motion does not provide the IRS with any adequate protection for its security interest. Moreover, the Proposed Order would improperly subordinate the IRS's interest to another secured creditor—Celtic Bank Corporation ("Celtic Bank")—with regard to property Debtor acquired after the IRS filed its tax liens.

**FACTS**

1. On April 17, 2019, Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code ("Petition"). *See* Dkt. No. 1.

2. On May 6, 2019, the IRS filed a Proof of Claim (the "Claim") in the amount of $256,517.20 consisting of a secured claim of $159,259.89, an unsecured priority claim of $88,534.80, and a general unsecured claim of $8,722.51. *See* Claims Register No. 2-1.

3. The secured portion of the IRS's claim consists of Debtor's unpaid federal taxes pursuant to the Federal Insurance Contributions Act ("FICA") for certain quarters in 2015, 2016, and 2017 (and interest and penalties on those taxes), as well as a miscellaneous penalty for tax year 2012 for Debtor's failure to properly submit W2 statements. *See* Claim at 4. These taxes and penalties were assessed on the following dates: (1) the miscellaneous penalty was assessed on January 11, 2016; (2) the FICA taxes for the quarter ending on December 31, 2015, were assessed on February 29, 2016; (3) the FICA taxes for the quarter ending on March 31, 2016, were assessed on January 2, 2017; (4) the FICA taxes for the quarter ending on June 30, 2016, were assessed on January 9, 2017; (5) the FICA taxes for the quarter ending on September 30, 2016, were assessed on January 9, 2017; (6) the FICA taxes for the quarter ending on December 31, 2016, were assessed on April 17, 2017; (7) the FICA taxes for the quarter ending on June 30, 2017, were assessed on February 5, 2018; (8) the FICA taxes for the quarter ending on

September 30, 2017, were assessed on June 25, 2018; and (9) the FICA taxes for the quarter ending on December 31, 2017 were assessed on September 25, 2018.

4. As of the Petition Date, the IRS's secured claim comprised $86,338.65 of assessed but unpaid taxes, $55,806.18 of penalties, and $17,115.06 of interest. *See* Claim at 4.

5. The IRS secured its claim against Debtor by filing notices of tax lien with the New York Secretary of State and the Westchester County Clerk's Office in 2016, 2017, and 2018. *See* Claim at 4.

6. On April 30, 2019, the Debtor filed the Motion to approve its use of cash collateral. *See* Dkt. No. 6. According to the Motion, Celtic Bank is a secured creditor of Debtor's that holds a first-lien mortgage and note in the amount of $905,000, which was perfected on September 20, 2013. *See* Motion, Ex. A. While the Motion discusses the adequate protection Debtor intends to provide to Celtic Bank, it does not propose any adequate protection for the IRS. Moreover, the Proposed Order would improperly subordinate the IRS's secured claim to Celtic Bank's claim.

## ARGUMENT

**A. The IRS Has a Valid, Secured Interest in the Debtor's Property**

7. Section 6321 of the Internal Revenue Code, 26 U.S.C. § 6321, provides that every federal tax lien is a lien "upon all property and rights to property, whether real or personal, belonging to" a taxpayer. An IRS lien reaches after-acquired property and property rights, including accounts receivable. *See United States v. McDermott*, 507 U.S. 447, 448 (1993); *Glass City Bank v. United States*, 326 U.S. 265 (1945).

8. The IRS perfected its tax lien against Debtor by filing notices of federal tax lien with the New York Secretary of State and the Westchester County Clerk's Office.  *See* Claim at 4.

9. Therefore, as of the Petition Date, the IRS had a valid, perfected interest in all property and rights to property belonging to the Debtor in the aggregate amount of $159,258.89.  *See* Claim at 4.

10. Pursuant to Bankruptcy Rule 3001(f), the Claim, which has been duly filed and executed, "constitute[s] prima facie evidence of the validity and amount of the claim."

11. Accordingly, absent evidence sufficient to rebut the *prima facie* validity and amount of the secured portion of the IRS's Claim, this portion of the claim should be allowed in the amount asserted.  *See* 11 U.S.C. § 502.

### B. The IRS Is Entitled to Adequate Protection

12. Pursuant to Section 363(e) of the Bankruptcy Code, the Debtor must therefore establish that it has provided "adequate protection" for the IRS's secured claim if it is to use cash collateral.

13. Section 363(e) authorizes the Court to prohibit or condition the use, sale, or lease of estate property "as is necessary to provide adequate protection" to an entity that has an interest in such property.  11 U.S.C. § 363(e).  The essential purpose of adequate protection is to protect a secured creditor's interest in collateral from diminishing in value.  *See In re Saypol*, 31 B.R. 796, 800 (Bankr. S.D.N.Y. 1983); *In re Island Helicopter Corp.*, 63 B.R. 515, 521 (Bankr. E.D.N.Y. 1986).  Bankruptcy courts "cannot allow" a secured interest to be "threatened" by the improper use of property subject to a secured claim.  *In re George Ruggiere Chrysler Plymouth, Inc.*, 727 F.2d 1017, 1019 (11th Cir. 1984).  It is well settled that a debtor bears the burden to

demonstrate that its creditor is adequately protected. *See In re South Side House, LLC*, 474 B.R. 391, 408 (Bankr. E.D.N.Y. 2012); 11 U.S.C. § 363(p).

14.     Section 361 of the Bankruptcy Code provides a non-exclusive list of means by which a debtor may provide adequate protection for secured claims, including (1) a cash payment or periodic cash payments; (2) additional or replacement liens; and (3) the realization by such entity of the indubitable equivalent of such entity's interest in such property.

15.     The principle of "indubitable equivalence," derives from the Second Circuit opinion in *In re Murel Holding Corp.*, 75 F.2d 941 (2d Cir. 1935), where the Court stated:

> It is plain that "adequate protection" must be completely compensatory; and that payment ten years hence is not generally the equivalent of payment now. Interest is indeed the common measure of the difference, but a creditor who fears the safety of his principal will scarcely be content with that; he wishes to get his money or at least the property. We see no reason to suppose that the statute was intended to deprive him of that in the interest of junior holders, unless by a substitute of the most indubitable equivalence.

*Id*. at 942.

16.     The Debtor here has proposed no adequate protection for the IRS's secured interest. The IRS respectfully submits that adequate protection in this case should include: (1) a replacement lien in favor of the IRS on Debtor's assets acquired post-petition to sufficiently replace any pre-petition assets used or sold; (b) periodic cash payments to the IRS; (c) periodic accounting to the IRS of any cash collateral Debtor uses to the extent its budget varies by more than 10% from the budget set forth in the Motion; and (d) an order requiring the Debtor to pay any post-petition federal tax liabilities in full, file all past due federal tax returns, and make all required federal tax deposits and payments. *See, e.g., In re Prime Six, Inc.*, No. 15-bk-42334 (CEC) (Bankr. E.D.N.Y. 2015) (Dkt. No. 48).

17. Thus, the IRS seeks the following as adequate protection. First, it proposes that Debtor make monthly cash payments to the IRS in the amount of $3,086.22, which represents the value of its secured claim apportioned over five years with 6% interest. *See id.* (debtor to make payments in the amount of $1,900 per month for five years as adequate protection for IRS's $100,000 secured claim).[2] According to Debtor's Motion, its weekly income (after expenses) is $4,733. *See* Motion, Ex. C. Thus, the proposed $3,086.22 *monthly* payment to the IRS would be less than one week's worth of Debtor's net income and less than half of the $6,874.35 Debtor proposes to pay Celtic Bank each month. *See* Motion at ¶ 18.

18. Second, the IRS requests a replacement lien, like that proposed to be given to Celtic Bank, in all of Debtor's pre-petition and post-petition assets and proceeds, with the same priority that existed as of the Petition Date.

19. Third, the IRS seeks periodic accounting for any cash collateral Debtor uses to the extent its budget varies by more than 10% from the budget set forth in the Motion

20. Finally, the IRS seeks an order requiring that Debtor remain current on all of its post-petition federal tax liabilities, that it timely file all post-petition federal tax returns, that it file all past due federal tax returns within 45 days of the order approving the use of cash collateral, that it timely make all required federal tax deposits and payments, and that it serve notice of all federal tax deposits (on IRS Form 6123) upon the Government within three (3) business days of each deposit.

---

[2] While the order in *Prime Six* states that Debtor's tax liabilities amounted to $447,129.40, only $100,000 of that amount was secured. *See Prime Six, Inc.*, Claim Register No. 11-4. Accordingly, $1,900 per month for five years amounted to the secured claim plus interest.

### C. Instead of Providing Adequate Protection for the IRS, the Motion and Proposed Order Improperly Elevate Celtic Bank's Claim Above the IRS's Claim

21. In addition to failing to provide adequate protection to the IRS, the Motion also improperly seeks a replacement lien for another secured creditor—Celtic Bank—that improperly subordinates the IRS's claim. As to Celtic Bank, the Motion seeks to "grant replacement liens in all of the Debtor's pre-petition and post-petition assets and proceeds . . . [which] shall be subject and subordinate only to: (a) United States Trustee fees . . . (b) professional fees . . . (c) the fees and expenses of a hypothetical chapter 7 trustee . . . (d) the recovery of funds or proceeds from the successful prosecution of [avoidance actions]." Motion at ¶¶ 36, 37.

22. This treatment of Celtic Bank's replacement lien vis-à-vis the IRS's interest is contrary to the Internal Revenue Code and the Supreme Court's decision in *United States v. McDermott*, 507 U.S. 447, and should not be approved. As explained below, as to the property Debtor acquired after the IRS perfected its interest, it is the IRS's claim that takes priority over Celtic Bank's claim.

23. The general federal priority rule is "the first in time is the first in right." *McDermott*, 507 U.S. at 449 (1993) (quoting *United States v. New Britain*, 347 U.S. 81, 85 (1954)). Under 26 U.S.C. § 6321, the date when the IRS assessed the taxes at issue typically establishes its priority. *Id.* However, where the competing lien belongs to the holder of a secured interest, which Celtic Bank appears to be, 26 U.S.C. § 6323(a) provides that the federal lien shall "not be valid . . . until notice thereof . . . has been filed." In that circumstance, a secured party has priority over the IRS when its lien was recorded before the IRS filed its notice of lien, but only if the other secured party's lien is "perfected," or "choate." *See United States v. Pioneer Am. Ins. Co.*, 374 U.S. 84, 88 (1963) ("Choate state-created liens take priority over later federal tax liens, while inchoate liens do not.") (citations omitted). A choate lien is one in which

7

"'the identity of the lienor, the property subject to the lien, and the amount of the lien are established.'" *Id.* at 88-89 (quoting *New Britain*, 347 U.S. at 84).

24. In *United States v. McDermott*, the Supreme Court held that where a bank's lien applies to after-acquired property, it is not perfected as to particular property until the debtor acquires rights in that property. 507 U.S. at 453-54. By contrast, the Court interpreted Section 6323(a) as according priority to the IRS from the date the agency files a notice of lien, even with respect to after-acquired property. *Id.* Accordingly, a federal tax lien has priority over a previously perfected security interest with respect to property acquired by the debtor after the date when the IRS perfected its lien. *Id.*

25. Here, Celtic Bank appears to have a first-lien mortgage and note in the amount of $905,000, which was filed with the New York Secretary of State on September 20, 2013. *See* Motion, Ex. A.[3] While the IRS's liens were perfected later, in 2016, 2017, and 2018, this does not mean that Celtic Bank has a senior lien on all of Debtor's property. As explained above, pursuant to the Supreme Court's decision in *McDermott*, to the extent the Debtor acquired property after the IRS perfected its liens, the IRS has priority as to that property. Thus, to the extent Debtor's Motion purports to grant Celtic Bank rights to such after acquired property ahead of the IRS, it is improper.

26. Accordingly, the IRS proposes that any replacement liens created as a result of the Motion simply be in the same order and priority as the IRS and Celtic Bank held pre-petition. Such an order would preserve the status quo and the priority the parties already have.

---

[3] While Debtor's Motion states that Celtic Bank's claim reaches "all of Debtor's assets including cash," the UCC financing statement attached as Exhibit A to the Motion is difficult to read and the collateral to which the interest attaches cannot be deciphered. Motion ¶ 11. Accordingly, the IRS reserves its right to challenge the validity of Celtic Bank's interest to the extent it does not attach to "all of Debtor's assets."

## **CONCLUSION**

For these reasons, the Court should issue an order requiring Debtor to provide the IRS adequate protection as a condition for using its cash collateral, not disturb the relative priority of the IRS with respect to other secured creditors, and any such other or different relief as this Court deems just and proper.

Dated: May 10, 2019
       New York, New York

                             Respectfully submitted,

                             GEOFFREY S. BERMAN
                             United States Attorney for the
                             Southern District of New York

By:   */s/ Alexander J. Hogan*
       ALEXANDER J. HOGAN
       Assistant United States Attorney
       86 Chambers Street, 3rd Floor
       New York, New York 10007
       Tel:   (212) 637-2799
       Fax:  (212) 637-2686
       Email: alexander.hogan@usdoj.gov