UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

In re:

LA CREMAILLERE RESTAURANT CORP.

Chapter 11
Case No. 19-22823 (RDD)

Debtor.

------------------------------------------------------------X

**INTERIM ORDER AUTHORIZING USE OF CASH
COLLATERAL BY DEBTOR PURSUANT TO 11 U.S.C. § 363(c)**

Upon the motion dated April 30, 2019 (the "Motion") of La Cremaillere, the above-captioned debtor and debtor in possession (the "Debtor") seeking authority to use cash collateral in which Celtic Bank Corporation ("Celtic Bank"), the New York State Department of Taxation and Finance ("NYS Dept. of Taxation") and the Internal Revenue Service ("IRS") (collectively, the "Secured Creditors") have asserted perfected security interests, pursuant to 11 U.S.C. §§ 363(c)(2) and (e) and 361 and Fed. R. Bankr. P. 4001; and an interim hearing having been held on May 15, 2019 (the "Interim Hearing"); and upon the record of the Interim Hearing and all of the pleadings filed in this case relating to the Motion; and all objections to the Motion having been withdrawn, overruled or resolved as set forth at the Interim Hearing; and after due deliberation and for the reasons stated by the Court at the Interim Hearing, the Court having determined to grant the Motion as provided herein and otherwise deny it and to make the following findings of fact and conclusions of law; now, therefore, it is hereby found and concluded that (subject to Paragraph 20 hereof with respect to Paragraphs C. – I hereof):

A. On or about April 17, 2019 (the "Petition Date") the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Code") and has continued in possession of its property and the management of its business pursuant to sections 1107 and 1108 of the Code.

B. As of the date hereof, the United States Trustee has not appointed an official creditors' committee as provided for in section 1102 of the Code. No trustee or examiner has

been appointed in this case.

C. The Debtor operates a restaurant located at 46 Bedford-Banksville Road, Bedford, NY 10506, which it rents from Meyzen Family Realty Associates LLC, an affiliated entity that is also a chapter 11 debtor.

D. The Debtor acknowledges, on behalf of itself and not its estate, that on or about September 16, 2013, the Debtor entered into a note and UCC-1 fixture filing (collectively the "Celtic Loan Documents") with Celtic Bank pursuant to which it borrowed $905,000.

E. The Celtic Loan Documents were recorded in the Westchester County Clerk's office on October 24, 2013.

F. On May 6, 2019, the IRS filed a proof of claim (the "IRS Claim") against the Debtor, identified as Claim No. 2-1 on the Claims Register, on account of due and owing, but unpaid, federal taxes (as well as penalties and interest). The claim is in the amount of $256,517.20, consisting of an asserted secured claim of $159,259.89, an asserted unsecured priority claim of $88,534.80, and an asserted general unsecured claim of $8,722.51.

G. The IRS secured its claim against Debtor by filing notices of tax lien with the New York Secretary of State and the Westchester County Clerk's Office in 2016, 2017, and 2018.

H. On April 19, 2019 NYS Dept. of Taxation filed a proof of claim (the "NYS Claim") which was amended on April 26, 2019, identified as Claim No. 1-2 on the Claims Register, on account of due and owing, but unpaid, New York State taxes (as well as penalties and interest). The claim is in the amount of $519,021.75 consisting of an asserted secured claim of $472,824.98, an asserted unsecured priority claim of $39,910.52 and an asserted general unsecured claim of $$6,266.25.

I. NYS Dept. of Taxation secured its claim against the Debtor by filing Warrants with the New York State Secretary of State and the Westchester Clerk's Office on January 12, 2015

and November 24, 2017.

J. The use of the Debtor's personal property which potentially constitutes collateral of Celtic Bank, the IRS and NYS Dept. of Taxation (the "Collateral"), including cash (the "Cash Collateral") is essential to the continued preservation and maximization of the Debtor's estate.

K. Continued use of the Cash Collateral on an interim basis pending a final hearing is necessary to prevent immediate and irreparable harm to the Debtor's estate in that without authorization to use the Cash Collateral, the Debtor's ability to meet its current necessary and integral business obligations will be impossible.

L. The value of Debtor's estate will be maximized by the continuation of Debtor as an on-going business, and the use of the Cash Collateral is essential to such operation.

**BASED UPON THE FOREGOING,** it is hereby ORDERED as follows:

1. Pending a further interim hearing on the Motion on June 21, 2019 at 10:00 a.m. (the "Interim Hearing"), the Motion is GRANTED on an interim basis. Effective *nunc pro tunc* as of April 17, 2019 and continuing through and including the Interim Hearing date (the "Preliminary Period"), the Debtor is authorized to use the Cash Collateral on an interim basis subject to the terms of this Order and in accordance with the budget annexed to the Motion as **Exhibit A**, or upon further written consent of the Secured Creditors or further order of this Court. At the Interim Hearing, the Court will consider the Debtor's request to use Cash Collateral after the Preliminary Period.

2. This Court has jurisdiction over this case, the Motino, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b) and this is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this Court pursuant to 28 U.S.C. § 1408. Notice of the Motion's request for interim relief was adequate and appropriate as contemplated by 11 U.S.C. §102(1)(A) and Fed. R. Bankr. P. 4001(b)(2).

3. In addition to the existing rights and interests of the Secured Creditors in the

Collateral and for the purpose of adequately protecting them from Collateral Diminution,[1] the Secured Creditors are hereby granted replacement liens ("Replacement Liens") to and upon all existing and hereafter acquired property of the Debtor (including but not limited to real, personal, tangible, and intangible property, as well as any proceeds, products, offspring, rents, and profits thereof) as security therefor, in the continuing order of priority of their prepetition liens without determination herein as to the nature, extent and validity of said prepetition liens and claims and to the extent Collateral Diminution occurs during the Chapter 11 case, subject and subordinate to: (i) United States Trustee fees pursuant to 28 U.S.C. § 1930, together with interest, if any, pursuant to 31 U.S.C. §3717 and any Clerk's filing fees, and (ii) the fees and commissions of a hypothetical Chapter 7 trustee in an amount not to exceed $10,000. In addition, the Replacement Liens granted hereby shall not attach to the proceeds of any recoveries of estate causes of action under sections 542 through 553 of the Code.

4. For the avoidance of doubt, nothing in this Order determines the relative priorities of the interests of Celtic Bank, the IRS and NYS Dept. of Taxation in the Collateral, and all parties reserve their rights in that regard. Nothing herein shall be construed to affect any party's relative lien priority and/or limit its right to challenge any lien priority granted herein.

5. All Secured Creditors reserve their right to assert a superpriority claim pursuant to 11 U.S.C. § 507(b).

6. As further adequate protection of Celtic Bank's interest in the Collateral, the Debtor shall make, no later than the tenth (10th) day of each month, monthly adequate protection payments, in the amount of $6,874.35 to Celtic Bank (on behalf of Meyzen Family Realty; but not in addition to adequate protection payments payable by Meyzen Family Realty to Celtic Bank), to be applied

---

[1] For purposes of this Order, "Collateral Diminution" shall mean any diminution in value of the Secured Creditors' respective interests in the Debtor's property as of the Filing Date, to the extent valid, perfected and enforceable, by reason of Debtor's use of the Collateral in accordance with this Order.

4

only to its allowed secured claim under section 506 of the Code. The Debtor shall also pay, timely and in full, all real estate property taxes and insurance premium payments in respect of Celtic Ban's asserted Collateral, as they come due and within two (2) business days of payment, provide proof of such payment to counsel for Celtic Bank.

7. The Debtor and Celtic Bank agree that, except as otherwise provided herein, all of the terms and provisions of Celtic Bank's loan documents are deemed to be valid, binding and enforceable against the Debtor as if same had been re-executed by the Debtor and Celtic Bank, subject to further Order of the Court as to allowance and avoidability and the relevant sections of the Code, including, without limitation, sections 362, 506 and 1129 of the Code.

8. As further adequate protection of the IRS's interest in the Collateral, the Debtor shall make, no later than the tenth (10th) day of each month, monthly adequate protection payments to the IRS in the amount of $2,654, to be applied only to its allowed secured claims under section 506 of the Code, subject only to such review, if any, to which Debtor may be entitled under the provisions of Title 26 of the United States Code, or the applicable provisions of the Code, including but not limited to sections 502 and 506 of the Code.

9. The Debtor will remain current on all of its postpetition federal tax liabilities, timely file all postpetition federal tax returns, file all past due federal tax returns within 45 days of this Order, make all required postpetition federal tax deposits and payments, and serve notice of all federal tax deposits upon the IRS within three (3) business days of each deposit.

10. Debtor shall promptly provide to the IRS and NYS Dept. of Taxation any and all financial information they reasonably request and shall permit the IRS, upon prior reasonable notice, to review its books and records with respect to the subject matter of this Order and make copies thereof during normal business hours. To the extent Debtor's budget varies by more than 10% from the budget identified in the Motion, it shall provide an accounting of its use of the Cash

Collateral.

11. Unless otherwise stated, copies of all federal tax returns and notices of federal tax deposits filed during the pendency of this bankruptcy case shall be sent to the IRS at: Internal Revenue Service, Attn: Kathleen Blais, Room 302, P.O. Box 9502, 80 Daniel Street, Portsmouth, NH 03802. Any other demands, notices, requests, consents, or other communications directed to the IRS that are related to this bankruptcy proceeding shall be made in writing and provided to: Alexander J. Hogan, Assistant United States Attorney, United States Attorney's Office, Southern District of New York, 86 Chambers Street, Third Floor, New York, NY 10007.

12. As further adequate protection of NYS Dept. of Taxation's interest in the Collateral, the Debtor shall make, no later than the tenth (10th) day of each month, monthly adequate protection payments to NYS Dept. of Taxation in the amount of $1,500, which shall be applied only to the allowed secured claim under section 506 of the Code of NYS Dept. of Taxation. Payments should be sent to counsel for NYS Dept of Taxation at the following address: Enid Nagler Stuart, Assistant Attorney General, Office of the New York State Attorney General, 28 Liberty Street, New YOri, NY 10005.

13. The Debtor will remain current on all of its postpetition New York State tax liabilities, timely file all postpetition New York State tax returns and file all past due New York State tax returns within 45 days of this Order.

14. All of the Debtor's income will be deposited into the Debtor's debtor-in-possession bank accounts and expenditures remitted therefrom. The Debtor shall timely file complete and accurate monthly operating reports in accordance with the reporting requirements of the Office of the United States Trustee's office.

15. The security interests and liens herein granted and regranted: (i) are and shall be in addition to all security interests, liens and rights of set-off existing in favor of the Secured Parties,

respectively, on the Petition Date; (ii) shall secure the payment of indebtedness to the Secured Parties in an amount equal to the Collateral Diminution; and (iii) shall be deemed to be perfected without the necessity of any further action by Celtic Bank, the IRS, NYS Dept. of Taxation, or the Debtor. Without limitation, therefore, the Secured Parties shall not be required to file financing statements or other documents in any jurisdiction or take any other action to validate or perfect the liens and security interests granted by this Order. The Secured Parties may, in their discretion, file a certified copy of this Order in any jurisdiction in which Debtor has or comes to have real or personal property, and in such event, the subject filing/recording officer is hereby authorized and directed to file/record such certified copy.

16. The Secured Parties reserve their rights to hereafter request additional adequate protection and to object to the adequacy of the adequate protection granted herein.

17. The Debtor shall maintain all necessary insurance, including, without limitation, general liability, property, life, fire, hazard, comprehensive, public liability, and workmen's compensation as required by Celtic Bank under the Celtic Loan Documents and the Office of the United States Trustee. The Debtor shall provide Celtic Bank with proof of all such coverage, as well as prompt notification of any change in such coverage which may hereinafter occur.

18. Notwithstanding anything to the contrary in this Order, the Debtor's authority to use the Cash Collateral pursuant to this Order shall terminate immediately and automatically, (a) upon the fifth (5th) business day following the delivery of written notice to the Debtor, its bankruptcy counsel, counsel to any official committee of unsecured creditors or, if no committee has been appointed, to the Debtor's 20 largest unsecured creditors, and counsel to the United States Trustee, by the Secured Parties of any breach or default by the Debtor of the terms and provision of this Order, unless the Debtor shall have cured such breach or default within such five (5) business day period, or (b) without notice of any kind upon the entry of an order of the Court providing for the

dismissal or conversion of the Chapter 11 case to a Chapter 7 case or appointment of a trustee without the written consent of Celtic Bank, the IRS or NYS Dept. of Taxation.

19. The provisions of this Order shall remain in full force and effect unless modified or vacated by subsequent order of this Court with the consent of the Secured Parties and the Debtor. If any or all of the provisions of this Order are hereafter modified, vacated, or stayed by subsequent order of this Court or any other court, such stay, modification or vacatur shall not affect the validity and enforceability of any lien, priority or benefit with respect to any indebtedness of the Debtor to the Secured Parties.

20. The stipulations contained in this Order are binding upon the Debtor and all parties in interest (including but not limited to any statutory committee subsequently appointed in the chapter 11 case), and any application of Collateral under this Order shall be indefeasible, unless (a) an adversary proceeding or contested matter challenging the validity, enforceability or priority of the Collateral, the prepetition obligations to the respective Secured Creditor (the "Prepetition Obligations"), its Replacement Liens, or the liens securing its Prepetition Obligations (the "Prepetition Liens") is properly commenced no later than ninety (90) days from the Petition Date plus such additional time as the Court, for cause shown, authorizes, and (b) a final order is entered in favor of the plaintiff or movant in any such timely and properly filed adversary proceeding or contested matter, the unchallenged Replacement Liens and Prepetition Liens shall be deemed legal, valid, binding, perfected, and the applicable Prepetition Obligations, Replacement Liens, and Prepetition Liens shall not be subject to avoidance or any other similar challenge by any party in interest seeking to exercise the rights of the Debtor's estate, including, without limitation, any successor(s) thereto (except as to the value of the Collateral therefor for purposes of section 506(a) of the Code and the application of section 506(c) of the Bankruptcy Code). If any such proceeding or contested matter is properly commenced, the Bankruptcy Court shall determine the validity, enforceability, and priority of the challenged Prepetition Obligations, Replacement Liens and/or the Prepetition Liens, but only with respect to and to the extent of the objections raised in such adversary proceeding or contested matter, and all other matters and objections not raised in such adversary proceeding or contested matter shall be deemed forever

waived. Nothing herein waives any issues with respect to the allowed amount of the secured claims under Section 506(a) of the Bankruptcy Code.

21. The entry of this Order and the payment of adequate protection to the Secured Parties is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair, any of the rights, claims or privileges of the Secured Parties in the Debtor's bankruptcy proceeding or in any other proceeding.

22. This Order shall be binding upon any subsequently appointed or elected trustee in a successor case under Chapter 7 of the Code.

23. The Bankruptcy Court shall retain jurisdiction with respect to all matters pertaining to this Order.

24. Objections to the further interim relief requested in the Motion shall be made in writing, filed with the Bankruptcy Court at the Court's website www.nysb.uscourts.gov (log in and password required), with a copy delivered directly to the chambers of the Honorable Robert D. Drain, and served upon Bronson Law Offices, P.C., 480 Mamaroneck Ave., Harrison, NY 10528, so as to be received no later than 5:00 p.m. seven days before the Interim Hearing.

Dated: White Plains, New York
      May 23, 2019

                          /s/Robert D. Drain
                         HONORABLE ROBERT D. DRAIN
                         UNITED STATES BANKRUPTCY JUDGE